1  Emily V. Griffen (SBN 209162)
     egriffen@shearman.com
2  Alethea M. Sargent (SBN 288222)
     alethea.sargent@shearman.com
3  SHEARMAN & STERLING LLP
   535 Mission Street, 25th Floor
4  San Francisco, California  94105-2997
   Telephone: (415) 616-1100
5  Facsimile: (415) 616-1199

6  Adam S. Hakki (*pro hac vice* to be submitted)
     ahakki@shearman.com
7  Daniel C. Lewis (*pro hac vice* to be submitted)
     daniel.lewis@shearman.com
8  SHEARMAN & STERLING LLP
   599 Lexington Avenue
9  New York, New York 10022
   Telephone:  (212) 848-4000
10 Facsimile:  (212) 848-7179

11 *Attorneys for Defendant Deutsche Bank Securities, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SESL RECOVERY, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>DEUTSCHE BANK SECURITIES, INC.,<br><br>Defendant. | Case No. _____<br><br>**NOTICE OF REMOVAL**<br><br>[REMOVED FROM CALIFORNIA SUPERIOR COURT, SAN FRANCISCO COUNTY, CASE NO. CGC-18-572159] |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant Deutsche Bank Securities, Inc. (hereinafter "DBSI") hereby removes Case No. CGC-18-572159, currently pending in the Superior Court of the State of California, County of San Francisco, and all claims and causes of action therein (the "Action"), to the United States District Court for the Northern District of California. As grounds for removal, Defendant states as follows:

## JURISDICTION

1. This Action may be removed under 28 U.S.C. § 1452(a) because it is "related to" a pending case under Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). This Court therefore has original jurisdiction over this Action pursuant to 28 U.S.C. § 1334(b).

2. This Court is part of the "district and division" embracing the place where this Action was filed—in San Francisco, in San Francisco County, California. *See* 28 U.S.C. § 84(c); Fed. R. Bankr. P. 9027(a).

3. As an alternative basis for removal, this Action may be removed under 28 U.S.C. § 1332 because, on information and belief, the Court has original jurisdiction due to the parties' diversity of citizenship.

## PROCEDURAL HISTORY

4. On December 17, 2018, plaintiff SESL Recovery, LLC (hereinafter "SESL" or "Plaintiff"), filed a complaint entitled *SESL Recovery, LLC v. Deutsche Bank Securities, Inc.* (hereinafter the "Complaint"), in the Superior Court of the State of California, County of San Francisco (hereinafter "State Court Action"). A copy of the Complaint is attached hereto as Exhibit 1.

5. The Complaint alleges that on January 11, 2016, a Second Lien Credit Agreement was entered into by and among SunEdison, Inc., as borrower, Deutsche Bank AG New York Branch as administrative agent, DBSI, Barclays Bank PLC, Macquarie Capital (USA) Inc., and Keybanc Capital Markets as joint lead arrangers and joint bookrunners, and the Second Lien

Lenders. *See* Exhibit 2 hereto (Second Lien Credit Agreement). DBSI also served as sole syndication agent and sole documentation agent. Ex. 1 at ¶ 33. Plaintiff alleges that it has acquired the claims asserted in the Complaint through assignments from certain of the original Second Lien Lenders and certain transferees of the original Second Lien Lenders.

6. The Complaint alleges that DBSI made fraudulent and negligent misrepresentations and omissions concerning the financial condition of SunEdison in order to persuade the Second Lien Lenders to loan $725 million to SunEdison under the Second Lien Facility, in violation of California common law. Compl. ¶ 1, Causes of Action Nos. 1-6.

7. No discovery has taken place in the Action.

8. Defendant's time to respond to the Complaint has not expired, and Defendant has not pled, answered, or otherwise generally appeared in the Action.

9. No motions or other proceedings are pending in the Action.

**TIMELINESS OF REMOVAL**

10. DBSI accepted service of the Complaint on January 2, 2019. Therefore, this Notice of Removal is timely. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (thirty-day removal period begins when a defendant is served with the summons and complaint, not by "mere receipt of the complaint unattended by any formal service").

**REMOVAL IS PROPER UNDER 28 U.S.C. § 1452(A)**
**("RELATED TO" BANKRUPTCY JURISDICTION)**

11. Removal is proper under 28 U.S.C. §§ 1452(a) and 1334(b) because the Action is "related to" the chapter 11 cases of SunEdison, the issuer of the Second Lien Facility, and several of its debtor subsidiaries and affiliates. On April 21, 2016, SunEdison filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y.) (the "SunEdison Bankruptcy Case"). On July 28, 2017, SunEdison's chapter 11 plan of reorganization was confirmed by the Bankruptcy Court. *See* Findings of Fact, Conclusions of Law and Order Confirming Second Amended Plan of Reorganization of

SunEdison, Inc. and Its Debtor Affiliates in the SunEdison Bankruptcy Case (Dkt. No. 3735) (the "Confirmation Order," attached hereto as Exhibit 3).[1]

12. Under 28 U.S.C. § 1452(a), "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." In turn, 28 U.S.C. § 1334(b) confers jurisdiction upon this Court of all civil proceedings that are "related to" cases under the Bankruptcy Code. This Court has original jurisdiction over this Action pursuant to 28 U.S.C. § 1334(b), and this Action may therefore be removed to this Court by Defendant pursuant to 28 U.S.C. § 1452(a) because the Action is "related to" the SunEdison Bankruptcy Case.

13. A federal court's "'related to' jurisdiction is very broad [and] includ[es] nearly every matter directly or indirectly related to the bankruptcy"—even after a chapter 11 plan has been confirmed. *In re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013). Nevertheless, this Action is *closely* "related to" the SunEdison Bankruptcy Case because it will affect "the interpretation, implementation, consummation, execution, or administration of the confirmed plan," such that "there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) (adopting "'close nexus' test for post-confirmation 'related to' jurisdiction") (citing *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166–67 (3d Cir. 2004)).

14. The broad scope of the bankruptcy court's post-confirmation jurisdiction as to the SunEdison Bankruptcy Case is set forth in the Chapter 11 Plan, pursuant to which the bankruptcy court expressly retained "exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including jurisdiction to," among other things, "adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases, this Plan, or that were the subject of proceedings before the Bankruptcy Court prior to the Effective Date, proceedings to adjudicate the allowance

---

[1] SunEdison's confirmed chapter 11 plan—the Second Amended Plan of Reorgnization of SunEdison, Inc. and Its Debtor Affiliates—is attached to the Confirmation Order as Exhibit A (the "Chapter 11 Plan").

1  of Disputed Claims and Disputed Interests, and all controversies and issues arising from or
2  relating to any of the foregoing;" "adjudicate any and all adversary proceedings and contested
3  matters that may be commenced and maintained by the GUC/Litigation Trust or any other matters
4  concerning administration of the GUC/Litigation Trust or any actions taken or contemplated to be
5  taken by the GUC/Litigation Trust;" "ensure that distributions to Holders of Allowed Claims are
6  accomplished as provided herein and adjudicate any and all disputes arising from or relating to
7  distributions under the Plan;" "issue and implement orders in aid of execution, implementation, or
8  consummation of this Plan;" "hear and determine disputes arising in connection with the
9  interpretation, implementation, or enforcement of this Plan or the Confirmation Order . . . ;" and
10 "hear any other matter not inconsistent with the Bankruptcy Code . . . ." *See* Exhibit 3, Article
11 XIII.
12      15.     This Action is sufficiently "related to" the SunEdison Bankruptcy Case to establish
13 federal jurisdiction in at least the following ways.
14      16.     *First*, this Action is "related to" the SunEdison Bankruptcy Case because Plaintiff's
15 claims against DBSI are subject to indemnification pursuant to the Second Lien Credit Agreement
16 and other documents.  Specifically, Section 10.04(b) of the Second Lien Credit Agreement
17 imposes broad indemnification obligations on SunEdison with respect to claims against DBSI,
18 including obligations to pay attorneys' fees.  *See* Exhibit 2, Section 10.04(b) (SunEdison agreed to
19 "indemnify each Agent (and any sub-agent thereof), and each Lender, and each Related Party of
20 any such foregoing Persons (each such Person being called an 'Indemnitee') against, and hold
21 each Indemnitee harmless from any and all losses . . . , claims, damages, penalties . . . , liabilities
22 and related expenses (including the fees, charges and disbursements of any counsel for any
23 Indemnitee), incurred by any Indemnitee or asserted against any Indemnitee by any third party or
24 by the Borrower or any other Loan Party arising out of, in connection with, or as a result of (i) the
25 execution or delivery of this Agreement, any other Loan Document or any agreement or
26 instrument contemplated hereby or thereby, the performance by the parties hereto of their
27 respective obligations hereunder or thereunder, the consummation of the transactions
28 contemplated hereby or thereby, . . . , the syndication of the credit facilities provided for herein . . .

1  (ii) any Loan or the use or proposed use of the proceeds therefrom, . . . or (iv) any actual or
2  prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether
3  based on contract, tort or any other theory, whether brought by a third party or by the Borrower or
4  any other Loan Party . . . .").

5        17.     In addition, the engagement letter dated December 8, 2015, between SunEdison,
6  DBSI (as joint lead arranger and joint bookrunner and sole syndication agent), and Deutsche Bank
7  AG New York Branch (as administrative agent) related to the Second Lien Facility (a redacted
8  version of which is attached hereto as Exhibit 4) provides that DBSI is entitled to broad
9  indemnification by SunEdison, stating in relevant part: "In the event that each Arranger (each, an
10 'indemnified person') becomes involved in any capacity in any action, proceeding or investigation
11 brought by or against any person, including shareholders of SunEdison, in connection with or as a
12 result of either this arrangement or any matter referred to in this Engagement Letter, SunEdison
13 agrees to periodically reimburse each indemnified person, for its respective reasonable legal and
14 other expenses (including the cost of any investigation and preparation) incurred in connection
15 therewith," and that SunEdison "agrees to indemnify and hold each indemnified person harmless
16 against any and all losses, claims, damages or liabilities to any such person in connection with or
17 as a result of either this arrangement, any matter referred to in this Engagement Letter or any
18 action, proceeding or investigation brought by or against any person . . . ." *See* Exhibit 4, Annex
19 A.  The language of this indemnification provision makes clear that SunEdison's obligation to
20 reimburse "reasonable legal and other expenses" incurred by DBSI arose at the moment that the
21 present Action was filed, and that (subject to certain exceptions) any losses sustained by DBSI
22 must be indemnified by SunEdison.

23       18.     Numerous courts in the Ninth Circuit have held that an action is "related to" a
24 bankruptcy case where there is an indemnification agreement between the defendant in the action
25 and a debtor, even if the defendant is not guaranteed indemnification.  *See Cobalt Partners, LP v*
26 *SunEdison, Inc.*, 2016 WL 4488181, at *4–5 (N.D. Cal. Aug. 26, 2016); *Pac. Life Ins. Co. v. J.P.*
27 *Morgan Chase & Co.*, 2003 WL 22025158, at *1–2 (C.D. Cal. Jun. 30, 2003); *see also Hendricks*
28 *v. Detroit Diesel Corp.*, 2009 WL 4282812, at *6 (N.D. Cal. Nov. 25, 2009); *In re Washington*

*Mut., Inc. Sec., Derivative & ERISA Litig.*, 2011 WL 4712177, at *2 (W.D. Wash. Oct. 6, 2011). *See also Lone Star Fund V (US;), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 386–87 (5th Cir. 2010) ("related to" bankruptcy jurisdiction existed where third-party debtor agreed to indemnify MBS seller "in a variety of circumstances, including any breach of a representation about the mortgages . . . and any claims made against [the seller] by third parties").  This includes post-confirmation cases applying the "close nexus" standard for "related to" bankruptcy jurisdiction. One district court case in the Ninth Circuit, faced with a broad indemnification provision that required reimbursement of attorneys' fees, concluded that "[b]ecause, at a minimum, [the debtor] is bound to indemnify [defendant] for its costs incurred in defending this lawsuit, this action will necessarily affect the 'interpretation, implementation, consummation, execution, or administration of the confirmed plan' of [the debtor's] bankruptcy."  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.,* 447 B.R. 302, 309–10 (C.D. Cal. 2010) (applying "close nexus" test and finding post-confirmation "related to" bankruptcy jurisdiction existed based on indemnification agreement related to mortgage loan purchase agreements between Countrywide Home Loans, Inc. and American Home Mortgage Corporation which "ma[d]e clear that American Home's obligation to defend CHL arose immediately upon the filing of this lawsuit").  *See also Dexia Holdings, Inc. v. Countrywide Fin. Corp.,* No. 2:11-cv-07165-MRP (MANx), slip op. at 3 (C.D. Cal. Nov. 8, 2011) (denying remand because "this case is 'related to' the AHM bankruptcy and has a 'close nexus' to the bankruptcy by virtue of Countrywide's contractual indemnification rights against AHM"); *Fed. Housing Fin. Agency v. Countrywide Fin. Corp.,* No. 2:12-cv-01059-MRP (MANx), slip op. at 1 (C.D. Cal. Apr. 5, 2012) ("As in *Stichting,* the filing of this lawsuit triggered indemnification rights that will impact the bankruptcy estates.  The Court finds that bankruptcy related-to jurisdiction is appropriate . . . .").

19. Normally, confirmation of a chapter 11 plan results in a discharge of all claims asserted against the debtor, including most claims for indemnification.  *See* 11 U.S.C. § 1141(d). However, Article XV(d) of the Chapter 11 Plan states that nothing therein or in the Confirmation Order shall impair the rights of third parties to seek indemnification or contribution with respect to litigation arising from the Second Lien Facility.  *See* Exhibit 3, Article XV(d) ("Nothing in the

Plan, Disclosure Statement or Confirmation Order shall impair any defenses, claims, counterclaims, or rights that any third parties . . . may have, and such defenses, claims, counterclaims, or rights (including, without limitation, any rights to seek indemnity, and any rights to seek setoff or recoupment, under any contract or agreement, or under applicable law or equity) with respect to the Second Lien Litigation (and any defenses thereto) are preserved and not impaired."). Similarly, Section 6.12 of the Chapter 11 Plan makes clear that the Bankruptcy Plan does not impact or otherwise diminish the indemnitees' rights to indemnification under the Second Lien Credit Agreement, by stating that DBSI retains the right to seek indemnification from SunEdison's estate or contribution from SunEdison's officers and directors. *See id.*, Section 6.12 ("[A]ny indemnification and reimbursement obligations in respect of the . . . Prepetition Second Lien Credit Facility [and/or] the Prepetition Second Lien Notes . . . which are expressly stated to survive any repayment under, or termination of, such respective facilities shall survive any cancellation or discharge under this Plan in accordance with their respective terms, and any rights that the Agents . . . may have under the agency provisions of such facilit[y] shall survive any such cancellation or discharge."). DBSI sent a demand letter to the reorganized SunEdison, Inc., on January 3, 2019, asserting its rights to indemnification with respect to this Action. *See* Exhibit 5 hereto.

20. *Second*, any potential recovery by Plaintiff in the present Action will necessarily be impacted by and/or offset against amounts already recovered or to be recovered by the Second Lien Lenders pursuant to the Chapter 11 Plan. Determination and calculation of those amounts is highly complex and will require interpretation of the Chapter 11 Plan, the Disclosure Statement and Disclosure Statement Order entered on June 13, 2017 (SunEdison Bankruptcy Case, Dkt. Nos. 3314 & 3319 (Exhibits 6 & 7 hereto)), and related documents. For example, the Bankruptcy Plan approved the formation of the "GUC/Litigation Trust Agreement" to hold and liquidate certain litigation trust assets (including causes of action and settlement and insurance proceeds), including the investigation and prosecution of claims, and to otherwise administer the distribution of proceeds from certain litigation on behalf of SunEdison for the benefit of certain beneficiaries, including the Second Lien Lenders. *See generally* Exhibit 3, Article VII and Exhibit 7.1

1  (GUC/Litigation Trust Agreement).  After a certain amount of the litigation trust proceeds are
2  distributed, the Second Lien Lenders (and others) are entitled to 48% of additional proceeds.  *See*
3  *id.*, Article VII(b)(i).  To the extent that Plaintiff, on behalf of the Second Lien Lenders, recovers
4  against DBSI in this Action, it may affect how the Litigation Trust proceeds are distributed.
5  Similarly, any recovery by the Second Lien Lenders pursuant to the GUC/Litigation Trust
6  Agreement would need to be considered and offset against any recovery in this Action.  Further,
7  Section 12.4 of the GUC/Litigation Trust Agreement retains exclusive jurisdiction in the
8  bankruptcy court over matters involving its enforcement or resolution of any claims or disputes
9  related to the GUC/Litigation Trust Agreement.  *See* Exhibit 3, Exhibit 7.1, Section 12.4.

10  21. *Third*, the Second Lien Lenders have already received distributions pursuant to the
11  Bankruptcy Plan that will necessarily limit the amount that Plaintiff could recover from Defendant
12  on behalf of the Second Lien Lenders in this Action.  *See, e.g.*, Exhibit 3, Article IV (allowing
13  second lien claims "in the amount of $625.2 million").  The computation of the value of the
14  various distributions made to the Second Lien Lenders pursuant to the Bankruptcy Plan, a portion
15  of which is in the form of participation rights in a Rights Offering and other difficult to value
16  interests, is highly complex and detailed.  *See* Exhibit 8 hereto, Rights Offering Procedures Order
17  entered on June 6, 2017 (SunEdison Bankruptcy Case, Dkt. No. 3283).  Computation of the
18  amounts already received by the Second Lien Lenders pursuant to the Bankruptcy Plan under this
19  complicated Rights Offering structure raises issues of plan interpretation and implementation and
20  is therefore something that the bankruptcy court is undoubtedly in the best position to determine.

21  22. Analysis of and determinations with respect to the above issues in connection with
22  this Action will, at a minimum, require interpretation of the Chapter 11 Plan and affect
23  administration thereof, which confers "related to" bankruptcy court jurisdiction post-confirmation.
24  *See In re Pegasus Gold Corp.*, 394 F.3d at 1194; *In re Wilshire Courtyard*, 729 F.3d at 1285.

**REMOVAL IS PROPER UNDER 28 U.S.C. § 1332
(DIVERSITY JURISDICTION)**

23. Removal is proper under 28 U.S.C. § 1332 because the Court has original jurisdiction, on information and belief, due to the parties' diversity of citizenship.

24. DBSI is a Delaware corporation with its principal place of business located in the state of New York.

25. Plaintiff is a Delaware limited liability company. However, a "limited liability company 'is a citizen of every state of which its owners/members are citizens,' not the state in which it was formed or does business." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 (9th Cir. 2016) (quoting *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006)).

26. The Complaint does not plead the citizenship of Plaintiff's owners/members, and DBSI cannot ascertain the owners'/members' citizenship through a reasonable inquiry of publicly available Delaware corporate records related to Plaintiff. *See* Exhibit 9 hereto (results of search of publicly available information regarding Plaintiff on Delaware Department of State: Division of Corporation's entity search webpage, available at https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx). Therefore, on information and belief, DBSI believes that Plaintiff's citizenship is diverse to that of DBSI pursuant to 28 U.S.C. § 1332(a)(1). *See Carolina Cas. Ins. Co. v. Team Equipment, Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014) (a party may plead allegations regarding diversity jurisdiction on information and belief where the "information necessary to determining the citizenship of the LLCs could not be determined from the public filings of those companies" and "at least some of the information necessary to establish the diversity of the parties' citizenship was within the defendants' [here Plaintiff's] control.") (citing *Lewis v. Rego Co.* 757 F.2d 66, 68–69 (3d Cir. 1985) (holding three of four defendants were permitted to allege in removal petition 'on information and belief' that fourth defendant, who had not joined the removal petition, was "not a citizen of Pennsylvania," and that this was "sufficient to establish diversity jurisdiction")).

27. Further, as required by 28 U.S.C. § 1332(a), the matter in controversy exceeds the sum or value of $75,000, as the Complaint seeks to recover damages "of at least $447 million." Compl. ¶ 11.

**PROCEDURAL REQUIREMENTS AND LOCAL RULES**

28. Defendant states that the claims asserted against it are non-core within the meaning of 28 U.S.C. § 157(b)(2). As required by Rule 9027(a)(1), Defendant states that they do not consent to entry of final order of judgment by any bankruptcy judge.

29. As required by 28 U.S.C. § 1446(a) and Rule 9027(a)(1), copies of all process, pleadings, and orders served upon Defendant (other than the Complaint, which is attached as Exhibit 1) are attached hereto as Exhibit 10.

30. Pursuant to 28 U.S.C. § 1446(d) and Rule 9027(b), written notice of the filing of this Notice of Removal and a copy thereof will be given to all parties.

31. Defendant signs this Notice of Removal under Rule 11 of the Federal Rules of Civil Procedure and Rule 9011 of the Federal Rules of Bankruptcy Procedure.

32. Defendant reserves the right to submit additional evidence and argument as needed to supplement this "short and plain statement" of the grounds for removal. Fed. R. Bankr. P. 9027(a).

**CONCLUSION**

33. This Court has original jurisdiction over this Action under 28 U.S.C. § 1334(b), and this Action is removable under 28 U.S.C. § 1452(a).

| | |
|---|---|
| Dated:  January 7, 2019 | Respectfully Submitted, |
| | By:  /s/ *Emily V. Griffen* |
| | Emily V. Griffen (SBN 209162) |
| | Alethea M. Sargent (SBN 288222) |
| | SHEARMAN & STERLING LLP |
| | 535 Mission Street, 25th Floor |
| | San Francisco, California  94105-2997 |
| | Telephone: (415) 616-1100 |
| | Facsimile: (415) 616-1199 |
| | egriffen@shearman.com |
| | alethea.sargent@shearman.com |
| | |
| | Adam S. Hakki (*pro hac vice* to be submitted) |
| | Daniel C. Lewis (*pro hac vice* to be submitted) |
| | SHEARMAN & STERLING LLP |
| | 599 Lexington Avenue |
| | New York, New York  10022-6069 |
| | Telephone: (212) 848-4000 |
| | Facsimile: (212) 848-7179 |
| | ahakki@shearman.com |
| | daniel.lewis@shearman.com |
| | |
| | *Attorneys for Defendant Deutsche Bank Securities, Inc.* |